IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMBRA PHILLIPS                                                                              PLAINTIFF

    v.                    CIVIL NO. 07-2125

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                             DEFENDANT

## MEMORANDUM OPINION

Plaintiff Tambra Phillips brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her application for DIB on November 17, 2004, alleging an inability to work since May 1, 1999, due to a substance addiction disorder, a bipolar disorder and back pain. (Tr. 11, 48-50). For DIB purposes, plaintiff retained insured status through June 30, 2000. (Tr. 11, 13). An administrative hearing was held on September 26, 2006. (Tr. 186-211). Plaintiff was present and represented by counsel.

By written decision dated March 22, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 13). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing

of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found during the relevant time period plaintiff retained the residual functional capacity (RFC) to lift and carry twenty pounds occasionally, ten pounds frequently; to sit for a total of six hours out of an eight-hour workday; and to stand and/or walk for a total of six hours out of an eight-hour workday. (Tr. 13). The ALJ found plaintiff could frequently grasp and finger and occasionally reach overhead. The ALJ found plaintiff could understand, remember and carry out simple instructions but would have difficulty with detailed instructions. The ALJ found plaintiff could perform work where interpersonal contact was incidental to work performed, complexity of tasks was learned and performed by rote with few variables that required little judgment and only simple, direct, concrete supervision. (Tr. 14). With the help of a vocational expert, the ALJ found plaintiff could perform other work as a cashier, a housekeeper and a mail clerk. (Tr. 19, 118-119).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on August 31, 2007. (Tr. 2-3). Subsequently, plaintiff filed this action. (Doc. No. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. No. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. No. 7,8).

**II.     Evidence Presented:**

At the time of the administrative hearing on September 26, 2006, plaintiff was thirty-eight years of age and obtained an eleventh grade education and general equivalency diploma. (Tr. 194).

Prior to the relevant time period, plaintiff sought treatment for back pain after jumping on a trampoline in November 23, 1994. (Tr. 134). At this visit, plaintiff also requested to switch

2

back to Prozac to treat her depression because her other medication was causing nausea. Plaintiff was given a prescription for Prozac with two refills and instructed to follow-up with her regular physician in three months.

Progress notes dated July 2, 1996, indicate plaintiff was admitted into a facility on June 29, 1996 and discharged on June 30, 1996, with a diagnoses of depression and suicide attempt. (Tr. 134).

Progress notes dated October 6, 1997, report plaintiff's complaints of a cough, congestion, shortness of breath and a runny nose. (Tr. 134). Plaintiff was diagnosed with bronchitis and prescribed EES-400, Proventil and Tussinex.

Progress notes dated September 3, 1998, report plaintiff's complaints of pain in her right shoulder. (Tr. 134). Plaintiff reported she injured her shoulder at work in January of 1998, and received treatment from another physician until she was released. Plaintiff reported her pain increased when she dropped it down by her side so she tried to keep her arm propped up. Plaintiff reported some pain when she raised her arm or reached behind her head.. Plaintiff also reported carpal tunnel symptoms in her left hand. Upon examination, the examiner noted plaintiff had good range of motion in her shoulder but did have pain with abduction. Plaintiff was very tender over the distal clavicle at the AC joint and very tender anteriorly over her acromion. Plaintiff's deep tendon reflexes were 2+ and equal and her motor strength was symmetric. Plaintiff was diagnosed with right shoulder pain. The examining physician suspected plaintiff had an AC joint tear. Plaintiff was taken off of work for two weeks so that her arm could be completely immobilized. Plaintiff was prescribed Relafin and given samples

3

AO72A
(Rev. 8/82)

of Vicodin. It was noted that plaintiff was also taking Prozac. Plaintiff was instructed to return in two weeks for a follow-up appointment.

Progress notes dated September 18, 1998, report plaintiff's pain was better but she still had tenderness over the distal clavicle when trying to do range of motion. (Tr. 133). The notes indicate plaintiff did not get the Relafen prescription filled because it was too expensive so she was just taking pain pills occasionally. The examining physician recommended plaintiff keep her arm immobilized for another two weeks and if there was no significant improvement plaintiff would be referred to an orthopedist. Plaintiff was also diagnosed with bronchitis and prescribed medication. The examiner noted plaintiff continued to smoke cigarettes.

Progress noted dated October 5, 1998, report plaintiff had been doing better. (Tr. 133). Plaintiff was out of her immobilizer because it was rubbing moles on her left side causing irritation. The examining physician noted plaintiff still had decreased range of motion and pain. Treatment notes indicate plaintiff had been taking Naprosyn and Flexeril. Plaintiff was diagnosed with inflammation of the AC joint on the right and told to stay off work for another four weeks. Plaintiff was to start physical therapy and to return for a follow-up in one month. Plaintiff was also given 30 Vicodin.

Progress notes dated November 2, 1998, report plaintiff's complaints of congestion/cough and an upper respiratory infection that had been getting worse over the past few days. (Tr. 132). Plaintiff was diagnosed with bronchitis and an upper respiratory infection and prescribed a Z-pack and Tussinex. Plaintiff also complained of a rash over her breast and was diagnosed with tinea corporis and given Lamisil.

4

Progress notes dated November 9, 1998, report plaintiff came in for a follow-up for her right shoulder. (Tr. 132). Plaintiff reported she went to physical therapy but felt that it really aggravated her shoulder more and made the problem worse. Upon examination, the examining physician noted plaintiff still had a lot of tenderness over the distal acromion and over the AC joint. The examiner noted a MRI did not show a rotator cuff injury but did show some hypertrophic changes of the AC joint. Plaintiff's medication was changed to Lodine XL and she was referred to Dr. Honghiran for an evaluation. The examiner noted plaintiff was still having problems with congestion, a frontal headache, stopped up ears and a mild cough. Plaintiff was diagnosed with sinusitis probably with allergy symptoms. Plaintiff was prescribed Allegra-D and given samples of Nasonex nasal spray.

Progress notes dated December 21, 1998, report plaintiff's complaints of cough and congestion and pain on the right side of her face. (Tr. 132). Plaintiff was diagnosed with sinusitis and prescribed Bactrim and Tussionex.

Progress notes dated April 13, 1999, report plaintiff's complaints of a headache and sore throat. (Tr. 131). Plaintiff reported she smoked one package of cigarettes a day. Plaintiff was diagnosed with bronchitis and prescribed Erythromycin. Plaintiff was also encouraged to stop smoking.

The pertinent medical evidence during the relevant time period of May 1, 1999, through June 30, 2000, reflects the following. Progress notes dated May 11, 1999, report plaintiff's complaints of pain in her lower back that radiated into her hips and legs. (Tr. 131). Plaintiff denied doing any new activities at work or at home to cause this pain. Plaintiff reported she worked the previous day but could not work this day. Upon examination, the examiner noted

5

plaintiff was an obese female and that it was difficult to determine if there was muscle spasm in the lumbosacral area. Straight leg raises were positive on the right with pain. Lumbar films were negative for any abnormality of the disc space and verterbal alignment. Plaintiff was diagnosed with cystitis and acute low back strain. Plaintiff was instructed to take Advil and Tylenol routinely, Vicodin for acute pain and Flexeril for muscle spasms. Plaintiff was given Macrobid for the infection and given a note to be off work for one week.

On May 12, 1999, plaintiff underwent lumbar spine x-rays that revealed minimal hypertrophic osteoarthritis. (Tr. 136). Dr. Don C. Riley saw no other significant pathology.

Progress notes dated May 19, 1999, report plaintiff had been on Prozac but was very depressed and at times had suicidal ideation but no intent or plan. (Tr. 131). Plaintiff reported she cried all the time and did not go to work and actually missed work frequently because she did not want to put up with people at work. Plaintiff reported she smoked marijuana every day and had for three to four years. Plaintiff also smoked cigarettes on a routine basis. Upon examination, the examiner noted plaintiff appeared quite depressed. The examiner noted plaintiff was not getting an adequate response from taking her Prozac dosage so plaintiff's dosage was increased to 40 mg a day.

Progress notes dated May 25, 1999, report low back pain. (Tr. 130). Lumbar spine studies showed minimal hypertrophic osteoarthritis.

There is no indication that plaintiff sought treatment again until April 19, 2002. (Tr. 130). The record shows after the expiration of her insured status, plaintiff sought treatment for cough/congestion, back, hip and wrist pain, depression, substance addiction, hypertension and anxiety. (Tr. 124-129, 177-182, 184-185).

### III. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff

must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

### IV.  Discussion:

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled. Specifically, plaintiff alleges the ALJ's analysis as to the evaluation of plaintiff's subjective complaints of pain and credibility was improper, that the ALJ erred in concluding plaintiff maintained an RFC to perform light work, that the ALJ erred in disregarding the opinion of plaintiff's treating physician and that the ALJ failed to fully and fairly develop the record.

####   A.  Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2000. Accordingly, the

overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of May 1, 1999, her alleged onset date of disability, through June 30, 2000, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id.* at 1169.

**B.     Subjective Complaints and Credibility Analysis:**

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We

9

believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

During the relevant time period, the medical evidence reflects plaintiff sought treatment for low back pain on May 11, 1999. At that time plaintiff denied doing any new activities at work or at home but reported she had missed work the previous day. Plaintiff was instructed to take Advil and Tylenol routinely, Vicodin for acute pain and Flexeril for muscle spasm. On May 12, 1999, a lumbar spine x-ray revealed minimal hypertrophic osteoarthritis. While plaintiff may indeed experience some degree of pain due to her back impairment, we find substantial evidence of record supporting the ALJ's finding that plaintiff does not have a disabling impairment. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain). Furthermore, there is no evidence indicating plaintiff sought treatment after May of 1999 for back pain until after her insured status had expired. *See Comstock v. Chater,* 91 F.3d 1143, 1147 (8th Cir.1996) (concluding that failure to seek regular medical treatment is inconsistent with complaints of disabling pain).

With regard to plaintiff's mental impairments, during the relevant time period, the medical evidence shows that on May 19, 1999, plaintiff reported she had been taking Prozac but was very depressed, cried all the time and missed work frequently because she did not want to "put up" with the people at work. At that time, the examiner noted plaintiff appeared quite depressed and opined that plaintiff was not getting an adequate response from her current Prozac dosage so the dosage was increased to 40 mg a day. Plaintiff did not seek further treatment for

AO72A
(Rev. 8/82)

her depression or any mental impairment until August of 2002 when plaintiff wanted to be started back on antidepressants because she could tell she was feeling worse without the medication. (Tr. 130). The ALJ noted plaintiff's absence of consistent and on-going treatment for any mental impairment during the relevant time period. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). While the evidence does reveal plaintiff's mental status worsened after 2002, based on the entire evidence of record we find substantial evidence to support the ALJ's determination that plaintiff did not have a disabling mental impairment prior to June 30, 2000, her date last insured.

The ALJ also considered the testimony of plaintiff's friend. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

The ALJ also considered plaintiff's daily activities. The ALJ noted there was no evidence of record supporting plaintiff's allegations that she was unable to perform activities of daily living during the relevant time period. Based on a review of the record, we find substantial evidence of record supporting the ALJ's determination that plaintiff's reported limited daily activities was outweighed by the record as a whole.

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she was unable to engage in any gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210,

11

1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

### C. RFC Assessment and wieght given to the treating physician:

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform light work prior to June 30, 2000. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and her medical records. Plaintiff's

12

capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on her activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

Plaintiff argues that the ALJ failed to give plaintiff's treating physician, Dr. Ben Jacobs, opinion substantial weight when determining plaintiff's RFC. "[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " *Dolph v. Barnhart,* 308 F.3d 876, 878 (8th Cir.2002). In the present case, in a letter dated October 31, 2006, Dr. Jacobs clearly stated that he began treating plaintiff two to three years ago and obtained a history from plaintiff. (Tr. 184). As plaintiff's date last insure expired on June 3, 2000, well before Dr. Jacobs indicates he began treating plaintiff, it was clearly proper for the ALJ to discount Dr. Jacob's opinion. The ALJ further pointed out that the non-examining mental and physical doctors opined plaintiff did not have a disabling mental impairment and could perform light work prior to the expiration of her insured status. Based on the evidence as a whole, we find substantial evidence supporting the ALJ's RFC determination during the relevant time period.

### D. Hypothetical Proposed to Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational

AO72A
(Rev. 8/82)

expert's interrogatories constitute substantial evidence supporting the ALJ's conclusion that plaintiff's impairments did not preclude her from performing other work as a cashier, a housekeeper or a mail clerk. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E. Fully and Fairly Develop the Record:

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding plaintiff's capabilities prior to her date last insured. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 20th day of August 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)